**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**DESEAN CHAVALIER KNIGHT**                                                      **PLAINTIFF**

**V.**                                                                         **CIVIL ACTION NO. 2:06cv129-MTP**

**BILLY MCGEE and GLEN NOBLES**                                         **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

THIS MATTER is before the court on the Motion for Summary Judgment filed by defendants Billy McGee, Sheriff of Forrest County, and Glen Nobles, Forrest County Deputy Sheriff [43], seeking judgment in their favor on claims raised against them by the *pro se* plaintiff's civil rights complaint. Having reviewed the submissions of the parties and the applicable law, the court finds that the Motion [43] is GRANTED and that the plaintiff's claims are dismissed with prejudice.

FACTUAL BACKGROUND

Plaintiff DeSean Chavalier Knight, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on May 17, 2006. Plaintiff asserts claims against defendants in their official capacities[1] relating to his conditions of confinement, denial of access to the law library, denial of adequate medical care, and retaliation while plaintiff was a pretrial detainee at the Forrest County Jail (the "Jail").[2]

Specifically, plaintiff complains that he had to share a tube of toothpaste with over twenty inmates, which exposed him to "all kinds of diseases." *See* Complaint [1] at 6. He further claims that the shower he was forced to share with other inmates is polluted and covered in mold

---

[1]During his *Spears* hearing and in his Reply Brief [26], plaintiff stated that he is suing the defendants in their official capacities only. *See also* Order [38].

[2] It appears from the docket that plaintiff is no longer an inmate at the Jail.

and fungus, causing several inmates to catch athlete's foot and ringworm. He also alleges that the Jail is overcrowded, which further complicates the problems described above, and forced him to sleep on the cement floor.

Plaintiff further alleges that he was bitten by a beetle in the face– on his upper and lower lip– which caused his face to swell. He complains that there are bugs and rodents "everywhere" due to the filth and uncleanliness of the Jail.

During his *Spears* hearing, plaintiff asserted additional claims. He claimed that he was denied adequate access to the law library. He alleged that he needed access to the law library to do some research to help him get his criminal case dismissed or to get a reduced sentence. Plaintiff testified that he ultimately pled guilty to the criminal charge, but that had he gotten adequate access to the law library, he probably would not have pled guilty. (Tr. 20.)

Plaintiff also asserted a claim for denial of adequate medical treatment for his back injury during his *Spears* hearing. (Tr. 21-22.) He claims that he filed three grievances, but he never saw a doctor or nurse for his back injury. (Tr. 22-23.)

Finally, plaintiff alleged what can liberally be construed as a retaliation claim. (Tr. 23-24.) Specifically, he claims he was threatened and/or discouraged from filing grievances. (Tr. 23.) He testified that officers threatened to "throw [him] in the hole" if he filed any more grievances. He claims that he is unsure if the grievances were ever properly delivered because he never received responses to them. (Tr. 24.)

Plaintiff seeks monetary relief in the amount of $80,000.00, and the following injunctive relief: a tube of toothpaste for each individual inmate; a clean environment to live in; a complete investigation of the Jail, policy and administration by an outside institution for overcrowding; and to condemn the Jail because of the filth and bugs and rodents. *See* Complaint [1] at 7.

On May 15, 2007, defendants filed their Motion for Summary Judgment [43]. Plaintiff

has not responded to the Motion, despite an Order [45] from the court to do so by June 15, 2007. Accordingly, this matter is ripe for disposition.

## STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* at 708, 712.

## ANALYSIS

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.") (citations omitted). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (*citing Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials such as defendants may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304.

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

With this legal framework in mind, the court will address plaintiff's claims.

Conditions of Confinement

Plaintiff alleged that he had to share a tube of toothpaste with over twenty inmates, which exposed him to "all kinds of diseases." *See* Complaint [1] at 6. He further claims that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing several inmates to catch athlete's foot and ringworm. He also alleges that the Jail is overcrowded, which further complicates the problems described above, and forced him to sleep on the cement floor. Plaintiff further alleges that he was bitten by a beetle in the face–on his upper and lower lip– which caused his face to swell. He complains that there are bugs and rodents "everywhere" due to the filth and uncleanliness of the Jail.

"The constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). "A pretrial detainee's due process rights are said to be as least as great as the Eighth Amendment protections available to a convicted prisoner." *Hare*, 74 F.3d at 639 (internal quotations and citations omitted).

Under the reasonable relationship test set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979), "a pretrial detainee cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose." *Hare*, 74 F.3d at 640.

4

Plaintiff's claim that he was forced to share a tube of toothpaste with over twenty inmates, which exposed him to diseases, does not amount to a constitutional violation. Applying the *Bell* test, providing the inmates with large tubes of toothpaste to share was reasonably related to a legitimate governmental purpose. As stated in the affidavits of Glen Nobles and Billy McGee, the Jail did not provide individual tubes of toothpaste to each inmate for "economic reasons and administrative ease." *See* Exs. D and E [44-2] at 41-44. Further, plaintiff testified that he always had access to toothpaste; he just did not have his own tube. (Tr. 8.) Therefore, plaintiff's alleged "decaying teeth" and plaque buildup were not caused by the Jail depriving plaintiff of toothpaste. Finally, plaintiff testified that he never contracted any diseases from sharing the tubes of toothpaste with other inmates. (Tr. 7.)

Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation. (Tr. 9.) Plaintiff has failed to show that such conditions amounted to punishment and were not reasonably related to a legitimate governmental purpose. *See Lee v. Hennigan*, 98 Fed. Appx. 286, 287-88 (5th Cir. 2004) (affirming dismissal of claim regarding the unsafe condition of shower facilities, where plaintiff failed to allege "the shower design [was] punitive and not reasonably related to a legitimate governmental objective"); *see also Carter v. Lowndes County*, 89 Fed. Appx. 439, No. 03-60188, 2004 WL 393333, at *1 (5th Cir. Jan. 23, 2004) (dismissing conditions of confinement claim for solitary confinement in an unsanitary cell and denial of shower privileges, where plaintiff failed to show that conditions amounted to punishment and were not incident to some other legitimate governmental purpose); *Mahmoud v. Bowie*, 234 F.3d 29, No. 99-31255, 2000 WL 1568178, at *2 (5th Cir. Sept. 14, 2000) (dismissing plaintiff's claim for unsanitary shower conditions, holding that such claim was conclusional and/or *de minimis* and did not rise to the level of a constitutional violation).

5

The sworn testimony of Glen Nobles and Billy McGee establishes that it is the policy of the Jail for the inmates to clean their cells, cellblocks, bathrooms, and showers immediately following breakfast each day in order to maintain proper sanitation, and that necessary cleaning supplies are made available to each cell block following breakfast each morning.  *See* Exs. D and E [44-2] at 41-44.  "The fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment."  *Lee*, 98 Fed. Appx. at 288 (*citing Bell*, 441 U.S. at 537, 539).

Plaintiff's claim that the Jail is overcrowded, which further complicates the problems described above, and forced him to sleep on the cement floor, also fails to amount to a constitutional violation.  Plaintiff testified during his *Spears* hearing that he was provided a mattress to sleep on.  (Tr. 12-13.)

"Overcrowding of persons in custody is not *per se* unconstitutional."  *Collins v. Ainsworth,* 382 F.3d 529, 540 (5th Cir. 2004) (*citing Rhodes v. Chapman*, 452 U.S. 337, 347-50 (1981)).  Rather, the constitution only prohibits the "imposition of conditions of confinement on pretrial detainees that constitute 'punishment.'"  *Collins*, 382 F.3d at 540 (*quoting Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996)).   Plaintiff has failed to show that the overcrowding of the Jail, which deprived him of an elevated bed, amounted to punishment and was not reasonably related to a legitimate governmental purpose.  *See Collins*, 382 F.3d at 545-46 (holding that while the jail exceeded capacity during the plaintiffs' stay, the plaintiffs failed to show that the alleged "unsuitable conditions" amounted to punishment in violation of the Fourteenth Amendment[,]" and reasoning that the inability to get judges to the jail on a Sunday combined with the bad weather conditions were "legitimate, practical concerns reasonably related to the overcrowding conditions . . . [that] easily [met] the deferential, rational basis *Bell* test").  The sworn testimony of Glen Nobles and Billy McGee establishes that the Jail had increase in

6

population after Katrina; accordingly, they were not able to provide every inmate with an elevated bed. *See* Exs. D and E [44-2] at 41-44. However, their sworn testimony also establishes that each prisoner was provided a mat to sleep on, as admitted by the plaintiff during his *Spears* hearing. *See* Exs. D and E [44-2] at 41-44; Tr. 12-13. The plaintiff does not enjoy a constitutional right to an elevated bed. *See Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986) (stating that the court was unaware of any authority for the proposition that the Constitution requires elevated beds for prisoners). Accordingly, plaintiff's claim must fail.

Finally, plaintiff's claim that he was bitten by a beetle in the face–on his upper and lower lip– which caused his face to swell, and that there were are bugs and rodents "everywhere" due to the filth and uncleanliness of the Jail fails to state a constitutional violation. Plaintiff has failed to show that the alleged pest infestation which resulted in a beetle bite amounted to punishment. To the contrary, the sworn testimony of Glen Nobles and Billy McGee establishes that the Jail is sprayed routinely for insects and rodents pursuant to the County's contract with Havard Pest Control. *See* Exs. D and E [44-2] at 41-44. Additionally, even if the plaintiff were in fact bitten by a beetle, plaintiff testified that he was only bitten by a bug on one occasion. (Tr. 14.) He further testified that although the bite resulted in swelling, he received medical treatment for the beetle bite the very same day, and that his wounds subsequently healed. (Tr. 15-16.) Such an injury is *de minimis*, and does not rise to the level of a constitutional violation. *See Lee v. Wilson*, 237 Fed. Appx. 965, No. 06-50191, 2007 WL 2141956, at *1 (5th Cir. July 26, 2007) (affirming dismissal of claims for excessive force and denial of adequate medical treatment because injury to plaintiff's lip was *de minimis*).

For the reasons set forth above, plaintiff's conditions of confinement claims fail as a matter of law.

Denial of Access to Courts

During his *Spears* hearing, plaintiff asserted that he was denied adequate access to the law library. He alleged that he needed access to the law library to do some research to help him get his criminal case dismissed or to get a reduced sentence. Plaintiff testified that he ultimately pled guilty to the criminal charge, but that had he gotten adequate access to the law library, he probably would not have pled guilty. (Tr. 20.) However, plaintiff testified that he was represented by an attorney at the time. (Tr. 17-21.)

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained n the law." *Degrate v. Godwin*, 84 F.3d 768, 768-69 (5th Cir. 1996) (*quoting Bounds v. Smith*, 430 U.S. 817, 828 (1977)); *Caraballo v. Fed. Bureau of Prisons*, 124 Fed. Appx. 284, 285 (5th Cir. 2005) (holding that because plaintiff had court-appointed counsel, he had no constitutional right of access to the law library to help prepare his defense, and therefore failed to state a claim upon which relief may be granted).

Because plaintiff was represented by court-appointed counsel during the time of the alleged deprivation, he had no constitutional right of access to the law library. *See Degrate*, 84 F.3d 768-69; *Caraballo*, 124 Fed. Appx. at 285. Further, plaintiff failed to allege a "relevant actual injury" caused by the alleged denial of access to the law library. *See Lewis v. Casey*, 518 U.S. 343, 349-52 (1996) (citation omitted) (stating that in order to prevail on an access-to-the-courts claim, plaintiff must show an "'actual injury' - that is, 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim'"); s*ee also Donnelly v. Edwards*, 95 Fed. Appx. 702, 703 (5th Cir. 2004) (upholding dismissal of access-to-the-courts claim because plaintiff did not establish that he was unable to

8

proceed in a court case as a result of alleged delays and denials of legal assistance); *Cartner v. Lowndes County*, 89 Fed. Appx. 439, 442 (5th Cir. 2004) (affirming dismissal of access-to-the-courts claim where plaintiff failed to explain "how his position as a litigant was adversely affected").

Accordingly, plaintiff's allegations fail as a matter of law.

Denial of Adequate Medical Treatment

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *see also Hare*, 74 F.3d at 647-48 (holding that deliberate indifference standard applies to pretrial detainee's claim for denial of adequate medical care).  Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (*quoting Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).  To successfully make out a showing of deliberate indifference, plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. Appx. at 965 (*quoting Domino*, 239 F.3d at 756); *see also Hare*, 74 F.3d at 648-50 .

During his *Spears* hearing, plaintiff alleged a claim for denial of adequate medical treatment for his back injury. (Tr. 21-22.)   He claims that he filed three grievances, but he never saw a doctor or nurse for his back injury. (Tr. 22-23.)  Plaintiff allegedly suffered such injury on or about February 17, 2006, when another inmate fell off the top bunk and landed on him.  (Tr. 13.)  However, plaintiff testified that he has never been diagnosed with any back condition.  (Tr.

9

23.)

As noted above, plaintiff has not responded to the motion for summary judgment and has offered no evidence to support his vague allegations that he was denied medical treatment. Indeed, the evidence in the record relating to plaintiff's medical care shows that the plaintiff was seen by a doctor and/or nurse at least eight times for other ailments after February 17, 2006, and never complained of his back injury. *See* Ex. G [44-2]; Exs. H and I [44-3].

In addition, there is no evidence of any personal involvement by the defendants in the alleged lack of medical care. The sworn testimony of Billy McGee and Glen Nobles establish that they were not aware of any injury to plaintiff's back, "much less an injury that amounted to an excessive risk to his health and safety." *See* Exs. D and E [44-2] at 41-44. Moreover, there is no evidence of any constitutionally deficient policy or lack of policy which would give rise to liability on the part of the defendants in their official capacity. For these reasons, plaintiff's claim for denial of adequate medical care fails as a matter of law.

Retaliation

During his *Spears* hearing, plaintiff alleged what can liberally be construed as a retaliation claim. (Tr. 23-24.) Plaintiff claims he was threatened and/or discouraged from filing grievances. (Tr. 23.) He testified that officers threatened to "throw [him] in the hole" if he filed any more grievances. He claims that he is unsure if the grievances were ever properly delivered because he never received responses to them. (Tr. 24.)

"To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize [retaliation] claims . . ." and must regard such claims with "skepticism." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). In order to state a valid claim for retaliation, the plaintiff must "allege the violation of a specific constitutional right and be prepared to establish that but for the

10

retaliatory motive[,] the complained of incident . . . would not have occurred." *Woods*, 60 F.3d at 1166.  A retaliation claim "places a significant burden on the inmate . . . [and] [m]ere conclusionary allegations of retaliation will not withstand a summary judgment challenge." *Id.* The plaintiff "must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id.*

Plaintiff has failed to meet his heavy burden of producing direct evidence of motivation for retaliation, and has failed to allege a chronology of events from which retaliation may be inferred.  Accordingly, plaintiff's retaliation claim fails as a matter of law.

## CONCLUSION

For the reasons stated above, the court finds that defendants' Motion for Summary Judgment [43] is GRANTED and that plaintiff's claims are dismissed with prejudice.

A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED AND ADJUDGED this the 14th day of November, 2007.

s/ Michael T. Parker
United States Magistrate Judge